Mr. Justice Walker delivered the opinion of the Court. John Rogers, one of the defendants in the court below, recovered judgment in the circuit court of Crawford county, against his co-defendant, Phineas II. White, as administrator of the estate of James Wilson, deceased, and thereafter, without notice to the complainants, who are the heirs at law of said Wilson, procured an order to be made by the probate court of said county, ¡empowering him to sell certain lands there situate belonging to the estate of said Wilson. To enjoin the sale of these lands under the order so made, the complainants brought this suit. They present, as grounds for equitnble.relief, that the declaration filed by Rogers against White, was insufficient in law to charge the administrator, and that, if sufficient, the statute of limitations had barred a recovery upon the bond in suit, and that the claimant presented his demand without first having made an affidavit that it was just and due, as required by the statute, but that said administrator wholly failed to interpose any defence or objection to the recovery whatever. However these facts may be considered in connection with others as tending to establish fraud in the procurement of the j udgment, yet the judgment must, until reversed or set aside, be com sidered as conclusive evidence of the validity of the claim adjudicated. And although it was clearly erroneous to have granted the order for the sale of the real estate, without first having given the notice required by the statute, the order was not void, because it was made in a proceeding in rein, for the sale of an estate, which, by our statute, is made assets in the hands of the administrator, and over which, by petition, the probate court had juris-: diction. We will not say, however, that cases may not arise in which the chancellor should injoin the administrator from selling real estate; such, for instance, as where it is made to appear that the debt has been paid, or that there are personal assets in the hands of the administrator sufficient to satisfy the claim, or that the judgment, or probate of such claim, was fraudulent, and that in truth no valid claim exists against such estate. In these, and perhaps some other cases, it would certainly be oppressive and wrong to permit the sale, and, possibly, the sacrifice of the real estate, which, under the statute, is only to be sold when it shall be made to appear that all the other assets have been properly applied. And although after the sale of such property shall have been made, the court might not feel at liberty, in most instances, to disturb the sale, but would leave the heir, if aggrieved, to his recourse over against the administrator, yet, before the sale is made, there can, we apprehend, be no very good reason why the administrator should not be restrained from perpetrating the wrong complained of. In the case before us, the heirs do not pretend that the judgment has been paid, or that there are personal assets out of which it should be paid, nor do they tender or offer to pay it. But their ground of complaint is, that the judgment is fraudulent, and that in truth no valid legal demand exists against the intestate’s estate. Our inquiry, therefore, is directed to the facts which conduce to prove the allegation of fraud. Fraud is rarely susceptible of direct and positive proof, but in most instances is established by numerous acts and circumstances, perhaps slight and unimportant when considered separately, yet when connected, often furnish strong proof of the real motives and intentions of the parties. In this case, we find a bond executed in 1829, by . an obligor at all times able to pay his debts. If this had been a simple bond or note for the payment of money at that date, the mere fact of so long a delay in its presentation unexplained would furnish a strong presumption that it had been paid. This, however, was a bond with a condition for the performance of covenants dependant upon uncertain contingencies; and although we think, upon looking ,to its legal effect, (if obligatory upon Wilson only upon the happening of contingencies which, from the obligee’s own showing have never arisen, and never could, at any time, have arisen,) that a cause of action accrued to the obligee from the time of its execution, as held in the case of Logan vs. Moulder, (1 Ark. R. 313;) still we think it most probable that the obligee might, in good faith, have considered it differently. So that the presentation of payment from lapse of time, is less strong, in this particular case, than in ordinary cases it would be. If, however, there -was no breach at the outset, it is manifestly clear, from the obligee’s own showing, that none has occurred since. After reciting that he had made a quit claim deed to the land conveyed, and that a perfect legal title to it was not then in him, Wilson bound himself to make such legal title so soon as it should vest in him, or could be obtained by him; and Rogers, in his declaration, avers that Wilson never had, nor have his representatives, any legal or other title to said land, nor power to make or convey any snch title, or lesser title. Now, it is evident, if these averments are true, that the contingency upon which Wilson bound himself to convey to Rogers a further and more perfect title, never has arisen, and therefore he has not broken his covenant, and there is no cause of action against him. If, on the other hand, the condition was broken when the bond was executed, then a cause of action for such breach accrued to Rogers from that date, and the claim has been barred by limitation for many years. Rogers commenced his suit in the circuit court on this bond against his co-defendant White, whom he styled administrator of the estate of James Wilson, on the 28th day of June, 1847. The writ was served on him on the 29th June, 1847, when it was charged expressly in the bill and fully admitted by both of the defendants, that White, in point of fact, did not obtain letters of administration on said estate until the July term of the probate court thereafter; and after which, at the August term, 1847, he voluntarily appeared in court, and waived exception to the sufficiency of the service of process, but offered no defence whatever to the action, whereupon judgment was rendered against him. In the outset, (as there was no other debt against the estate of Wilson but that of Rogers’, and as he was not of kin, nor a credi tor, and administration was had in Missouri, where Wilson died,) there is no apparent motive which could have influenced White to sue out letters of administration, unless it was to facilitate the collection of Rogers’ debt. And although both Rogers and White expressly deny all combination or conference between each other, the truth of which we need not question, Rogers, in his answer, furnishes a clue to the true state of facts. He says that he placed the claim in the hands of an attorney, who conducted the matter without his agency, and the answers are only responsive so far as relates to their conduct as between each other without reference to the acts of the attorney. We must suppose that some understanding existed between tKe attorney and White, or that White was a volunteer in a matter in which he had no conceivable interest. Under the circumstances of the case, we think it most probable that White was procured to administer on Wilson’s estate with a view to the recovery of Rogers’ debt. We will not say with any intention to injure or defraud Wilson’s heirs, because he may have had no such intention, and it is not our province to impute to him a wrong motive, unless necessarily impelled to it by the evidence. He may have believed that Rogers had a just demand, and have assumed the trust as a necessary act to be performed under the obligations of friendship, to enable Rogers to recover his debt. If, however, there could bo a doubt as to the' fact that White acted in concert with the attorney for Rogers, the after circumstances would tend greatly to remove it. We find him sued as administrator, and a writ served upon him before he is appointed administrator; and yet he after-wards becomes such administrator. The service is defective, and yet he voluntarily appears, and waives the defence. The declaration is demurrable, and he fails to demur to it. No affidavit, that the claim is just, is filed and none required. The claim is barred by limitation, and no plea interposed. The contract of long standing, and yet no inquiry is made of the heirs with regard to it, nor were they apprised of the application for an order to sell the real estate, although the statute expressly requires such notice to be given. In truth, the administrator’s entire course of conduct shows such a want of care and attention to the trust reposed in him that, admitting the recovery to have been the result of carelessness and inattention on his part, still they do in fact amount to a fraud upon the rights of the heirs. The administrator is the legal representative of the intestate, and it is certainly his duty to see that the statutes testing the validity of claims presented against an estate, should be complied with, and to interpose every legal defence which the intestate might have interposed. And although there are decisions which go to the extent that an administrator is not bound to plead the statute bar of limitations as a general rule, it is clearly their duty to do so where the claim was barred by limitation before the death of the intestate, or is so stale as to raise a presumption of payment from lapse of time, or where the statutory pre-requisites to its presentation or allowance have not been complied with. See Hodgden vs. White, 11 N. H. R. 208. We have not overlooked the fact that the appellants setup affirmatively the removal of Wilson from the State in avoidance of the statute bar, but there is no proof to sustain such allegation; but, on the contrary, from their own showing, the statute bar commenced running before Wilson’s removal. If the mere failure to plead the statute bar was the only circumstance in the case tending to prove neglect or fraud, we might feel more hesitancy in sustaining the decree of the circuit court, but, throughout the transaction, the acts of the administrator were calculated to facilitate the collection of the debt, rather than to protect the interest of the estate, and, as we have said, whether the result of inattention or design, the effect upon the rights of the heirs is substantially the same. Let the decree of the Crawford circuit court be affirmed with costs.